IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LUIS LEAL, SR.,                    )        CASE NO. 3:08-CV-00226
                                   )
                Plaintiff,         )
                                   )
        v.                         )        JUDGE DAVID A. KATZ
                                   )
MICHAEL J. ASTRUE,                 )        MAGISTRATE JUDGE McHARGH
Commissioner                       )
of Social Security,                )
                                   )        **REPORT & RECOMMENDATION**
                Defendant.         )

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Luis Leal's ("Plaintiff" or "Leal") application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. **INTRODUCTION & PROCEDURAL HISTORY**

Plaintiff originally filed an application for Supplemental Security Income benefits in October of 2000.  (Tr. 79-80).  This application was denied initially and upon reconsideration.  (Tr. 22-23).  On July 11, 2002, Plaintiff appeared without counsel and testified at a hearing held before Administrative Law Judge Brian Bernstein ("ALJ Bernstein").  (Tr. 418-43).  ALJ Bernstein denied Plaintiff's application for benefits.  (Tr. 151-59).

On January 28, 2003, Plaintiff filed a second application for Supplemental Security Income benefits. (Tr. 139-40). Leal's second application was also denied initially and upon reconsideration. *Id.* Plaintiff requested and was granted an administrative hearing. (Tr. 141-42, 164). On October 8, 2004, Plaintiff appeared with counsel and testified at a hearing held before Administrative Law Judge Steven Neary ("ALJ Neary"). (Tr. 49). On November 30, 2005, ALJ Neary issued an unfavorable decision ruling that Plaintiff was not disabled. (Tr. 49-54). Subsequently, the Appeals Council issued an order vacating ALJ Neary's November 30, 2005 decision and directed that he conduct a new hearing. *See* (Tr. 13).[1] The Appeals Council further mandated that on remand the ALJ should directly address the opinions of Plaintiff's treating sources and "questions related to the claimant's earnings history and past work." *Id.*

Therefore, ALJ Neary conducted a second hearing on January 10, 2007. *Id.* Plaintiff appeared at the hearing with counsel. Vocational expert, Mr. Charles McBee, also appeared at the proceeding. *Id.* On August 28, 2007, ALJ Neary issued his decision, again finding that Plaintiff was not disabled. (Tr. 13-20). Leal requested review of ALJ Neary's second unfavorable decision. (Tr. 8). On December 7, 2007, the Appeals Council denied Leal's request for review of ALJ Neary's second decision, and thereafter, Plaintiff sought judicial review in the instant court. (Tr. 5-7, 377). During the pendency of the judicial action, the Commissioner filed a motion to remand Plaintiff's case due to the Commissioner's inability to locate the audio recording of the hearing held before ALJ Neary on January 10, 2007. *See* (Tr. 378-79). In response, Plaintiff filed a motion for summary judgment arguing that he should not be required to undergo another hearing due to the Commissioner's failure to locate the audio recording. *Id.* Magistrate Judge James S. Gallas

---

[1]The undersigned could not locate the Appeals Council's remand order in the record.

recommended that Plaintiff's motion be denied, and that the Commissioner's motion be granted to remand the case back to the Social Security Administration. *Id.* Ultimately, Judge David Katz adopted Judge Gallas's report and recommendation after finding that Plaintiff had failed to file timely objections to Judge Gallas's report. (Tr. 377). Thereafter, the Appeals Council vacated the Commissioner's prior decision and ordered that a new hearing be scheduled for Plaintiff. (Tr. 380-83).

Plaintiff's fourth hearing was initially scheduled for July 6, 2009, however, Plaintiff failed to appear at this proceeding. (Tr. 384, 391). The hearing was eventually rescheduled for November 12, 2009, before Administrative Law Judge John Markuns (the "ALJ" or "ALJ Markuns"). (Tr. 360). On the date of the hearing Leal executed a Waiver of Right to Representation form, waiving his right to be represented by counsel during the hearing. (Tr. 359). Accordingly, Plaintiff appeared and testified at the hearing without counsel. (Tr. 468-509). Vocational expert, Ms. Amy Kutschbach (the "VE"), also appeared and testified at the proceeding. *Id.*

On December 30, 2009, ALJ Markuns issued an unfavorable written decision in which he applied the five-step sequential evaluation,[2] and determined that Leal had not established that he was

---

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment,

disabled under the Social Security regulations.  (Tr. 350-58).  Leal requested review of the ALJ's decision from the Appeals Council.  On April 16, 2010, the Appeals Council denied Plaintiff's request for review, thereby making ALJ Markuns's determination the final decision of the Commissioner.  (Tr. 346-47).  Plaintiff now seeks judicial review of the ALJ's decision.  The Court notes that Plaintiff represents himself *pro se* in this appeal.

Leal, born on October 2, 1953, was fifty-six years old as of the date of his hearing before ALJ Markuns, and therefore, considered as a "person of advanced age" for Social Security purposes. (Tr. 356, 487); *See* 20 C.F.R. § 416.963(e).  Leal received mechanic's training in high school and has completed three years of college.  (Tr. 488-89).  Plaintiff has past experience working as a janitor, reception clerk, companion, cable service sales representative, retail stocker/storekeeper and as a case aide.  (Tr. 505).  Leal also testified that he has served as a coach for youth basketball, baseball and football.  (Tr. 500).

## II.  <u>MEDICAL EVIDENCE</u>

Plaintiff originally presented to Dr. Donald Baker on October 10, 2002, complaining of back pain.  (Tr. 234-35).  Leal informed Dr. Baker that his back pain had been present for the past 32 years, although he had never sought treatment for the pain.  (Tr. 234).  Dr. Baker saw Plaintiff again

---

claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

in January of 2003 and indicated that he could not diagnose any objective findings to explain Plaintiff's back pain.  (Tr. 232).  Dr. Baker also gave Plaintiff a trial pack of Celebrex to manage the pain.  *Id.*

Leal first presented to Dr. Frank Jaeblon, an orthopedist, on February 27, 2003.  (Tr. 300). He complained of low back and cervical thoracic pain.  *Id.*  Dr. Jaeblon also commented that Plaintiff complained of anterior bilateral hip pain.  Dr. Jaeblon diagnosed Plaintiff with lumbosacaral spondylosis and gave Leal samples of Celebrex.  (Tr. 301).  He recommended that Plaintiff begin physical therapy and get x-rays on his back.  *Id.*  Leal's x-rays showed "moderate vertebral degeneration of the cervical levels C5, C6 and C7...[but] no significant abnormalities were noted." (Tr. 246).  On a follow up visit in April, Dr. Jaeblon gave Plaintiff samples of Vioxx after Plaintiff complained that the Celebrex was not helping.  *Id.*  He also ordered that Leal refrain from working for six weeks.  (Tr. 246, 293-94).  Thereafter, Plaintiff underwent physical therapy from March to June of 2003.  (Tr. 258-70, 297-99).

On April 27, 2003, State Agency Physician Kamala Saxena completed a residual functional capacity ("RFC") assessment evaluating Plaintiff's physical abilities.  (Tr. 236-40).  She opined that Leal could occasionally lift 50 pounds and frequently lift 25 pounds.  (Tr. 237).  Dr. Saxena also opined that Leal could stand, sit, and walk approximately six hours in an eight hour work day.  *Id.* Based on her review of the record, she concluded that Plaintiff's claims were not credible.  (Tr. 240).

In Dr. Jaeblon's treatment notes from June of 2003, he informed Leal to continue the exercises Leal learned during physical therapy.  (Tr. 244).  Dr. Jaeblon acknowledged that Leal expressed concern over what he (Dr. Jaeblon) would state in paperwork which Leal had given him to complete for medicare purposes.  *Id.*  The doctor commented that he "d[id] not see why [Leal]

5

would be employable at a type of job where he could have the luxury of standing and sitting and even possibly laying down throughout the day to help control his pain, continue with his Vioxx and exercise." *Id.*  In addition, Dr. Jaeblon remarked that Leal "probably would not be able to do a job where it required a lot of heavy lifting, nor full range of motion of the trunk or neck."  *Id.*

In August of 2003, State Agency Physician E. S. Villanueva completed a review of Plaintiff's file to assess his RFC.  (Tr. 251-56).  Dr. Villanueva also opined that Leal was capable of lifting 50 pounds occasionally and 25 pounds frequently. (Tr. 252).  Dr. Villanueva further found that Leal could sit, stand or walk roughly six hours in an eight hour work day.  *Id.*  The doctor commented that Plaintiff's statements regarding his symptoms were not credible, and that his treating physician's findings regarding Plaintiff's need to alternate between sitting, standing, and lying down throughout  the day were not consistent with the record.  (Tr. 255).

In September of 2003, Leal again presented to Dr. Jaeblon complaining of pain in his low back, neck and upper thoracic region.  (Tr. 285).  Leal requested Dr. Jaeblon to prescribe him a back brace to help support his neck and back while he worked because his job required lifting and turning. *Id.*  Dr. Jaeblon declined to prescribe Leal a brace for his back finding that "his back would be[come] dependent, causing muscular weakness."  *Id.*  Instead, Dr. Jaeblon stressed to Plaintiff that he needed to find a job that did not require any "heavy lifting or full body flexion and extension." (Tr. 285-86).  Additionally, Dr. Jaeblon suggested that Leal find work which permitted him to alternate between sitting and standing in order to rest his back.  (Tr. 286).

When Dr. Jaeblon treated Plaintiff in March of 2003 the doctor performed more x-ray tests on Leal.  (Tr. 281).  The x-rays revealed mild sclerotic changes on Plaintiff's hips.  *Id.*  Dr. Jaeblon ordered a computed tomography (CT) scan of Plaintiff's  spine and pelvis to further examine these

areas.  (Tr. 282).  The physician wanted to run additional tests on Plaintiff, but Leal did not want to have any blood work done on his body.  *Id.*  The CT scan results were mostly normal.  The doctor's impression of the spine commented, "there are some small lumbar osteophytes present at L4 and L2 . . . [but] I do not see evidence of additional finding[s] of significance."  (Tr. 279).  Likewise, the doctor's impression of Leal's pelvis stated that "no acute pelvic abnormality is defined."  (Tr. 280). Following the CT scan, Dr. Jaeblon treated Plaintiff in May and August of 2004.  Dr. Jaeblon noted that Leal continued to suffer from degenerative lumbar spine in its early stages.  (Tr. 274-75).  He also gave Plaintiff a prescription for physical therapy and referred him to pain management.  *Id.*  In addition, Dr. Jaeblon informed Plaintiff that there was nothing more that Dr. Jaeblon could do to help Plaintiff, as there was nothing that could surgically cure Plaintiff's pain.  (Tr. 274).

In January of 2005, Plaintiff's physical therapist, Ms. Julie Ritter, wrote a letter detailing her care of Plaintiff since July of 2004.  (Tr. 311).  Ms. Ritter noted that physical therapy benefitted Plaintiff, but that he was under a great deal of stress due to financial concerns.  *Id.*  She also recommended that Leal consult with a psychiatrist to assist with his stress, and what she perceived to be mental problems.  *Id.*

Between March and July of 2006, Leal presented to an array of doctors and physical therapists for pain in his neck, back, and hips.  (Tr. 313-34).  On August 25, 2006, Plaintiff was seen by Dr. John Kamau.  (Tr. 312).  Upon examination, he noted that Plaintiff's head and neck were normal, his straight leg raise test was normal, and that his abduction, adduction, extension and flexion were within normal limits.  Dr. Kamau diagnosed Leal with chronic right hip pain extending to the left hip, joint pain in the knee, hip and low back, obesity, and chronic fatigue.  *Id.*  He advised Leal to continue treating his pain with aspirin, and advised him to come back for a follow-up visit

7

only if the aspirin did not relieve the pain.  *Id.*  Plaintiff continued physical therapy treatment from September through November of 2006, during which time he reported that his condition either stayed the same or improved.  (Tr. 337-345).

### III.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20. C.F.R. §§ 404.1505, 416.905.

### IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also

8

supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. <u>ANALYSIS</u>

The whole of Plaintiff's arguments are summarized within the three documents he filed with the Court.  First, Plaintiff filed his complaint attached with a short memorandum.  (Doc. 1, at 2-3). In the memorandum, Leal stated that he qualified for "mean[ing]ful/gainful employment pursuant to [his] 1996-[1998] tax records."  *Id.*  Plaintiff further alleged that he qualified for compensation under the meaningful/gainful employment guidelines.  Secondly, Plaintiff filed his brief on the merits, in which he argued that the Commissioner admitted to his entitlement to benefits.  (Doc. 37). Lastly, Leal filed a reply brief which asserted a number of allegations purporting to bolster his entitlement to benefits.[3]  Namely, he stated that he qualified for benefits pursuant to 20 C.F.R. § 416.968(d)(1)-(3).  (Doc. 39, at 1).  Leal also claims that the transcript record is incomplete.

The Court's role at this juncture is to determine whether the ALJ's decision is supported by substantial evidence. *Cunningham*, 12 F. App'x at 362.  Therefore, the Court will address the above-referenced arguments made by Plaintiff, and then proceed to evaluate whether the record supports

---

[3] Some of the arguments stated within Plaintiff's reply brief do not appear to be related to his Social Security application.  *See* (Doc. 39, at1-3, Ex.'s B-G).  Therefore, the Court will only address those parts of Plaintiff's argument that the Court deems relevant to Leal's disability claim, giving Plaintiff the benefit of the doubt whenever possible.

ALJ Markuns's decision.

## A.  Plaintiff's Arguments

Throughout Plaintiff's filings and the hearing, Leal made several references to the fact that he qualifies for benefits pursuant to the "mean[ing]ful/gainful" employment guidelines.  (Doc. 1, at 2; Doc. 37, at 2; Doc. 39, at 2; Tr. 500-01).  However, Plaintiff failed to cite any regulation or case law to further explain his entitlement to benefits under this theory.  Presumably, Leal was referring to the five-step sequential evaluation process used in determining whether a claimant qualifies for benefits.  Otherwise, the Court is at a loss as to what guidelines Plaintiff was referencing in his filings.  The undersigned will analyze the ALJ's application of the five-step sequential evaluation process later in its opinion.

Next, the Court rejects Leal's contention that Defendant agreed with Leal's assertion that he qualified for disability benefits.  In Plaintiff's brief on the merits, he suggested that the Commissioner's answer to his complaint essentially acknowledged Plaintiff's entitlement to benefits.  *See* (Pl.'s Br. at 1).  In paragraph one of Defendant's answer, the Commissioner admitted to the allegations contained within paragraphs one through three of the complaint.  (Doc. 35).  Leal's complaint was filed on the Social Security complaint template provided by the Court, on its website, designed to assist *pro se* litigants.  *See* U.S. District Court Northern District of Ohio, (Aug. 09, 2011),  http://www.ohnd.uscourts.gov/assets/Pro_Se/SocialSecurityComplaintSample.pdf. Paragraphs one through three of the template complaint contain the bare representations necessary to request judicial review of an ALJ's decision.  *See id*.  Paragraph one states the claimant's social security number and address.  *Id*.  Paragraph two indicates that the plaintiff "complains of a decision which adversely affects the plaintiff in whole or in part."  *Id*.  Lastly, paragraph three alleges that

the plaintiff has exhausted all administrative remedies prior to the filing of the complaint.  *Id.*

Accordingly, Defendant's admission to the allegations set forth in paragraphs one through three of

the complaint do not establish that Plaintiff is entitled to benefits.  Additionally, because Plaintiff

attached a memorandum to his complaint which also contains three paragraphs, the Court notes that

Plaintiff could have understood Defendant's answer to be an admission to the allegations stated

within Plaintiff's memorandum instead of the allegations set forth in the complaint. To the extent

that Plaintiff read Defendant's answer as such, the undersigned finds that Plaintiff misconstrued the

admissions set forth in the answer.  Defendant's answer cannot be read as entitling Plaintiff to

judgment for two reasons.  First, the answer expressly states that Defendant admitted to certain

allegations contained in Plaintiff's *complaint*, not in Plaintiff's *memorandum* attached to the

complaint.  (Doc. 35, at ¶ 1).  Second, even if Plaintiff's memorandum were considered as part of

the complaint, paragraph four of Defendant's answer states that it denied any allegation of the

complaint that was not otherwise admitted.  (Doc. 35, at ¶ 4).  Therefore, the undersigned finds that

Plaintiff is not entitled to judgment based upon the admissions contained within Defendant's answer.

Leal also maintains that he should be awarded benefits pursuant to 20 C.F.R. §

416.968(d)(1)-(3).  This regulation explains how the administration defines skilled work.  *See* 20

C.F.R. § 416.968.  Section (d) specifically details how the administration determines whether a

claimant has acquired job skills which can be used in a different job.  *Id.*  In other words, this section

considers the "transferability" of Plaintiff's job skills.  As will be discussed further in the next

section, ALJ Markuns found that Leal had no past relevant work, and thus, found that it was not

necessary to address the issue of whether Plaintiff had transferable job skills.  (Tr. 357).  Because

20 C.F.R. § 416.968 merely addresses how an ALJ may categorize a claimant's job skills, and does

11

not confer any right or entitlement to benefits upon a claimant, the Court rejects Plaintiff's argument suggesting that he is thus entitled to benefits pursuant to this regulation.  Although Plaintiff has some work experience, the ALJ held that Leal's job experience was not sufficient to meet the administration's definition of "past relevant work" as defined in 20 C.F.R. § 416.965.  (Tr. 356).  Lastly, Leal submits that the transcript is incomplete.  The Court will discuss this issue later in its opinion.

### B.  ALJ's Decision

#### 1.  Duty To Develop The Record

It is well-recognized, that an ALJ has an affirmative duty to develop a full and fair record in Social Security proceedings due to their non-adversarial nature.  *See Heckler v. Campbell*, 461 U.S. 458, 471 (1983) (Brennan, J., concurring); *see also Richardson v. Perales*, 402 U.S. 389, 410 (1971) ("an examiner [is] charged with developing the facts").  This duty is heightened when the claimant is unrepresented by counsel at the hearing.  *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983).  To satisfy this special duty, the administrative law judge must "scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts."  *Id.* at 1052 (*citing Gold v. Sec'y of Health, Edu. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972) (internal quotations omitted)).  While there is no bright line test to gage whether the ALJ adequately developed the record for a *pro se* claimant, a reviewing court should "scrutinize the record with care" to determine whether the ALJ satisfied his duties.  *Id.*  Yet, this "special scrutiny" will not always require remand.  *Id.*

In the case *sub judice*, the Court finds that ALJ Markuns adequately developed the record.  To begin, the hearing lasted for over one hour and produced a transcript 40 pages in length.  (Tr. 470-509).  The hearing began by ALJ Markuns conducting a prolonged discussion with Plaintiff regarding records which Plaintiff desired to include in the record.  (Tr. 470-86).  The ALJ then

proceeded to question Leal regarding his personal and vocational background.  ALJ Markuns also questioned Plaintiff regarding his physical impairments.  (Tr. 497-501).  In addition, the ALJ accepted testimony from a vocational expert.  Because Leal indicated that he had not received a copy of the VE's resume, the ALJ asked the VE to state a brief summary of her resume on the record, at the conclusion of which Leal stated that he was satisfied with the VE's qualifications.  (Tr. 502-03).  The ALJ also informed Leal that he could question the VE, prompting Leal to ask questions regarding the income potential of the jobs identified by the VE.  (Tr. 508).  The ALJ explained to Plaintiff that his duty was to determine whether Plaintiff had a medical impairment which prevented Plaintiff from performing his past work or any other work, and that disability determinations did not take into account any salary discrepancy between the income a claimant formerly earned and that which he would earn in a new or different position.  (Tr. 5-6, 508-07).  The undersigned's examination of the transcript reveals that the ALJ conducted a fair hearing sufficient to satisfy his duties under *Lashley*.  *See Holden v. Califano*, 641 F.2d 405, 408-09 (6th Cir. 1981).

Although Leal's reply brief suggests that the record is incomplete, Plaintiff's argument is not well-taken.  In Leal's reply brief, he asserts that the record is incomplete because it does not contain evidence of his recent treatment at a Mercy Health Partners ("Mercy") facility.  (Pl.'s Reply Br. at 1).  In support of this argument, Leal attached a copy of a bill from Mercy dated April 14, 2010.  (Doc. 39-1, Ex. A).  But, evidence submitted after the ALJ's decision is issued "cannot be considered part of the record for purposes of substantial evidence review."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (*citing Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)).  Yet, the court may remand a case for consideration of additional evidence that was not presented to the ALJ where the plaintiff shows that the evidence is (1) new, (2) material, and (3)

13

there was good cause for the failure to incorporate such evidence into the prior proceeding.  42 U.S.C. § 405(g)*; Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (6th Cir. 1984) (per curiam)*.  Although the bill from Mercy would constitute as new because it was generated after the close of the hearing on November 12, 2009, the evidence does not warrant remand because it does not satisfy the standard for materiality.  To satisfy the requirement of materiality, the claimant must "demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988).*  In this case, there is nothing in Mercy's bill that persuades the Court that it would have changed ALJ Markuns's ruling.  Accordingly, this new evidence does not warrant remand. As Plaintiff has not cited to any other evidence which was excluded from the record, the Court finds that the record before ALJ Markuns was complete.[4]  It is also worth noting that the ALJ took considerable time at the beginning of the hearing to ensure that Plaintiff was able to submit additional documents into the record.  Thus, Plaintiff was given ample opportunity to supplement the record if it was indeed deficient in any way.

2.  Substantial Evidence Standard

The key issue before the Court is whether substantial evidence supports ALJ Markuns's decision.  After reviewing the record, the undersigned concludes that the ALJ's decision is well-supported by the record.  At step one of the sequential evaluation analysis, the ALJ found that Leal

---

[4]Obviously, the Court is aware that the transcript of the second hearing held before ALJ Neary is missing from the record.  However, the only other record the Court found missing was the Appeals Council's order vacating ALJ Neary's original decision.  Regardless, neither of these missing records would have had an adverse affect on ALJ Markuns's ruling.

had not engaged in substantial gainful activity since his application date of January 28, 2003.  (Tr. 352).  This decision inured to Plaintiff's benefit and is supported by the record.  Although Plaintiff admitted that he was working for the United States Department of Labor during the time of the hearing, and had performed other types of work during the relevant time period at issue, there was little or no evidence that any of these positions qualified as substantial gainful activity.  *See* 20 C.F.R. § 416.927.

At step two, ALJ Markuns ruled that Plaintiff suffered from two severe impairments: lumbar and cervical spondylosis.  This finding is supported by the treatment notes of Plaintiff's treating physician, Dr. Frank Jaeblon and physical therapist, Ms. Julie Ritter.  (Tr. 274-75, 293, 295, 311).  Plaintiff's key complaint to his doctors concerned pain in his neck, back and hips.  Moreover, Plaintiff does not appear to disagree with this finding as he also referenced these impairments in his reply brief.  *See* (Doc. 39, at ¶¶ 20-23).

Next at step three, the ALJ concluded that neither of these impairments, individually, or in combination, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 416, Subpart P, Appendix 1.  (Tr. 355).  The record supports the ALJ's conclusion.  While Leal purports that his impairments are disabling (Pl.'s Reply Br. at 2, ¶¶ 18-23), he failed to identify evidence in the record showing how either of his impairments satisfied the criteria of any of the listings.  In addition, the Court's review of the record did not reveal any medical opinion evidence suggesting that Plaintiff's condition satisfied any particular listing.

Before proceeding to step four, ALJ Markuns found that Leal retained the RFC to perform a range of light work.  (Tr. 355).  In assessing Plaintiff's RFC, the ALJ analyzed the medical opinion evidence, including opinions from Plaintiff's three treating physicians, Plaintiff's testimony and

15

Plaintiff's daily activity level.  When assessing the medical evidence contained within a claimant's file, it is well-established that the ALJ must give special attention to the findings of the claimant's treating source.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Opinions from such physicians are entitled to controlling weight if the opinion (1) is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(d)(2).  Even when the treating physician's opinions are not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion.  *Wilson*, 378 F.3d at 544.  The regulations also require the ALJ to provide "good reasons" for the weight accorded to the treating source's opinion.  20 C.F.R. § 416.927(d)(2).

The Court finds that the ALJ properly evaluated Leal's treating physicians' opinions in rendering his RFC finding.  ALJ Markuns began by mentioning that although Dr. Baker noted that Plaintiff complained of lumbar pain, the doctor also indicated that Leal had "negative[] straight leg raising and was neurovascularly intact bilaterally in his upper and lower extremities."  (Tr. 356).  Furthermore, Dr. Baker's treatment note from January of 2003 stated that he could "not find any objective findings to back up [Leal's] complaint[s] of lumbar pain."  (Tr. 232).  In fact, the undersigned was unable to find any record showing that Dr. Baker placed any restrictions on Plaintiff's ability to work.  Therefore, the ALJ's decision was consistent with Dr. Baker's findings.

Next, the ALJ considered Dr. Jaeblon's findings regarding Leal's physical abilities.  The ALJ referenced three treatment notes from Dr. Jaeblon.  First, ALJ Markuns addressed Dr. Jaeblon's report from June of 2003, by noting that Dr. Jaeblon opined that Leal should not perform work which involved repetitive heavy lifting.  The ALJ's RFC finding incorporated this restriction by

16

limiting Leal to only light exertional work.  Although, the ALJ's decision did not specifically address the portion of Dr. Jaeblon's treatment note in which Dr. Jaeblon stated that he "did not see why [Leal] would be employable at a type of job where he could have the luxury of standing and sitting and even possibly laying down throughout the day to help control his pain"(Tr. 244, 356), this failure does not warrant remand.  Reading Dr. Jaeblon's treatment note in context, it appears that he inadvertently neglected to put the word "not" after the word "would", thereby making the sentence read as follows: "I do not see why he would [not] be employable . . ." (Tr. 244).  This presumption is further buttressed by the next sentence in Dr. Jaeblon's notes, which states that Plaintiff would need to avoid work which involved substantial heavy lifting or a full range of motion in his trunk or neck.  *Id.*  This is also the same interpretation which ALJ Neary gave to Dr. Jaeblon's note.  (Tr. 17).  Additionally, Dr. Jaeblon's treatment note from September of 2003, demonstrates that Dr. Jaeblon believed Plaintiff was capable of working, as it indicated that instead of getting a back brace, Leal needed to find a job which did not require "heavy lifting or full body flexion and extension." (Tr. 286).  Thus, ALJ Markuns reasonably evaluated and accepted the findings contained within Dr. Jaeblon's June 27, 2003 treatment note.

While the ALJ acknowledged Dr. Jaeblon's treatment note[5] from September of 2003 as illustrating that Plaintiff retained the ability to ambulate without difficulty as well as the ability to change between a seated position and standing up without difficulty, ALJ Markuns failed to mention that both this note and Dr. Jaeblon's treatment note from June of 2003 suggested that Leal required work which permitted a sit/stand option.  (Tr. 286, 356).  Defendant contends that the ALJ was not

---

[5]This treatment note was actually written by Dr. Brent Damer.  (Tr. 285-86).  It appears that Dr. Jaeblon merely co-signed the note.  *Id.*

17

required to assign controlling weight to this portion of Dr. Jaeblon's findings because it was contradicted by other substantial evidence in the record.  The Commissioner points to the RFC assessment completed by State Agency Physician E. S. Villanueva in support of its argument.  (Tr. 251-256).  The assessment indicates that Dr. Villanueva reviewed Dr. Jaeblon's findings prior to completing the RFC report.  Based on this review of the record, Dr. Villanueva remarked that Dr. Jaeblon's findings indicating that Leal needed a job which allowed him to alternate between sitting, standing and lying down was "not consistent [with] the mostly normal clinical findings" within the record.  (Tr. 255).

The undersigned agrees with Defendant.  As Dr. Villanueva noted, Dr. Jaeblon's finding requiring a sit/stand option was not supported by the clinical findings in record.  Dr. Jaeblon's own notes show that objective testing performed on Plaintiff illustrated mostly normal results.  *See* (Tr. 285).  In fact, while Dr. Jaeblon diagnosed Leal with lumbar and cervical degenerative joint disease, he noted that Plaintiff's complaints of pain were based upon Leal's subjective statements.  *Id.* Furthermore, Dr. Jaeblon's finding conflicted with Dr. Villanueva's RFC assessment which stated that Plaintiff's statements regarding his restrictions on standing and sitting were not credible, and found that Dr. Jaeblon's sit/stand option was not supported by the record.  (Tr. 255).  Accordingly, the Court finds that Dr. Jaeblon's finding limiting Plaintiff to work which permitted a sit/stand option was not entitled to controlling weight as it was unsupported by the record and contradicted by other substantial evidence.  *See* 20 C.F.R. § 416.927(d)(2).

Although ALJ Markuns failed to explicitly state why he rejected this portion of Dr. Jaeblon's opinion, the ALJ's ruling is consistent with Dr. Jaeblon's findings in all other respects.  For example, the ALJ limited Leal to light work after crediting Dr. Jaeblon's findings that Leal suffered

18

from lumbar and cervical degenerative joint disease. (Tr. 285, 353-56). The ALJ also echoed Dr. Jaeblon's conclusion that Leal had subjective pain in his lower back. (Tr. 274, 356). Unlike the ALJ in *Wilson* who summarily dismissed the opinions of the claimant's treating physician without offering good reasons for this decision, *see* 378 F.3d at 545-46, ALJ Markuns stated that he gave "great evidentiary weight" to the opinions of Leal's treating physicians, remarking that Dr. Jaeblon's treating notes demonstrated that Leal could ambulate without limitation, and change between a seated and standing position briskly without difficulty. (Tr. 356). In fact, ALJ Markuns's RFC is largely consistent with Dr. Jaeblon's opinions, as the ALJ credited nearly all of the doctor's findings, save Dr. Jaeblon's recommendation that Plaintiff's needed a sit/stand option. Accordingly, the undersigned finds that the ALJ's failure to provide good reasons for the rejection of Dr. Jaeblon's sit/stand option was harmless as such a failure was *de minimis* at most.

As the Sixth Circuit stated in *Wilson*, an ALJ's failure to articulate reasons for the weight he assigned to a treating source's opinion may be irrelevant when the ALJ makes findings consistent with the opinion. 378 F.3d at 547. The undersigned concludes that to remand the case because ALJ Markuns failed to explain why he rejected Dr. Jaeblon's sit/stand option would be an exercise in futility as ALJ Markuns's ruling was overwhelmingly consistent with Dr. Jaeblon's opinion. Furthermore, given that neither Dr. Jaeblon's later treatment notes, nor those of any other physician treating Leal referenced Plaintiff's need for a sit/stand option (Tr. 274, 277, 281-82), the Court finds that the ALJ's failure to address this limitation was harmless because remand is highly unlikely to lead to a different disposition of Leal's claim. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.")

19

(*citing Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)).  This circuit recognizes that an ALJ can consider all the evidence without making explicit credibility findings on each piece of conflicting testimony, "so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Id.* at 508 (*citing Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).  While it would have been expedient for the ALJ to directly address this issue, it is apparent to the Court that his written decision implicitly reflected a reasonable rejection of Dr. Jaeblon's sit/stand option recommendation when ALJ Markuns emphasized Dr. Jaeblon's findings showing that Plaintiff had no problem with ambulation, sitting, or changing between the two postural movements.  Therefore, the undersigned finds that any  error committed by the ALJ with respect to his treatment of Dr. Jaeblon's sit/stand option was harmless and does not warrant remand.

Finally, ALJ Markuns's RFC finding was supported by Dr. Jaeblon's notes from August 24, 2004 and Dr. Kamau's treatment notes from August 25, 2006, both of which the ALJ cited in his decision.  (Tr. 356).  Dr. Jaeblon's treatment note reflects that Leal maintained his ability to ambulate normally and had no limitation or irritation with side bending or strength in his lower extremities.  (Tr. 274).  Dr. Jaeblon concluded that Leal was experiencing the early stages of degenerative lumbar spine.  *Id.*  But, Dr. Jaeblon indicated that there was no surgical cure for Plaintiff's pain, and that Leal should follow-up with his primary care physician for pain management.  Likewise, Dr. Kamau opined that Plaintiff's physical examination revealed normal findings, and he therefore informed Plaintiff that he could continue to treat his pain with aspirin (Tr. 312).

ALJ Markuns also properly considered Leal's daily activities in determining Plaintiff's ability to perform work.  The ALJ noted that Plaintiff was able to perform a wide range of daily

activities despite his allegations of disabling pain.  For example, ALJ Markuns explained that during the hearing, Leal admitted that he had worked long hours in a family business, provided home health care for both his father and uncle prior to their passing, drove nearly 20 miles each day, and was currently performing maintenance work on a part-time basis.  (Tr. 356).  Plaintiff's ability to perform this array of tasks further supports ALJ Markuns's RFC finding determining that Plaintiff could perform light work.

At step four of the sequential evaluation process, ALJ Markuns ruled that Leal did not have any past relevant work.  (Tr. 37).  As previously discussed, although Plaintiff admitting to performing some work activity during the relevant time period, none of this work qualified as past relevant work under the Social Security regulations.  Thus, the burden shifted to the Commissioner to show that there were jobs existing in the economy in significant numbers which Leal could perform.  20 C.F.R. § 416.920; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Lastly, at step five, the ALJ determined that Plaintiff's RFC allowed him to perform jobs which existed in significant numbers in the national economy.  During the hearing, the ALJ posed a hypothetical question to the VE, describing an individual of the same age, education and work experience as Leal.  (Tr. 506).  The hypothetical question asked the VE to consider whether such an individual would be capable of performing work at the light exertional level.  In response, the VE answered that such a person would be able to work as a cafeteria attendant, a housekeeping cleaner, or an office helper.  (Tr. 507).  Notably, after the VE gave this testimony, Leal admitted that he could perform such jobs.  (Tr. 508).  However, Leal's concern was that those positions would not allow him to earn the salary that he had previously earned during the year 1997.  *Id.*  ALJ Markuns explained to Plaintiff that the law governing the determination one's entitlement to Social Security

benefits was not based upon earning potential, but rather based upon whether there were jobs existing which the claimant could perform.  (Tr. 508-509).  Accordingly, by Leal's own admission, he is not disabled because despite his impairments, he retains the RFC to perform work which exists in significant numbers in the national economy.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner, that Plaintiff was not disabled, is supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: August 11, 2011.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters, 638 F.2d 947 (6th Cir. 1981).*